## WEST v. SINCLAIR REFINING CO.

### No. 5505.

United States District Court
W. D. Missouri, W. D.
April 18, 1950.

Kenneth Midgley and George Gangwere, Jr., of Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., William Aull, Jr., Lexington, Mo., attorneys for plaintiff.

Albert Thomson and Harold T. Van Dyke of Johnson, Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., attorneys for defendant.

REEVES, Chief Judge.

The only question for decision in this case is whether the court upon the evidence adduced at the trial erred in directing a verdict for the defendant. It was the opinion of the court at the time that there was no substantial testimony upon which the jury might deliberate on the issues made by the pleadings.

It was not controverted but that the plaintiff's husband, Ralph A. West, died in Lexington, Lafayette County, Missouri, on or about the 30th of May, 1947, and that his death was occasioned by dreadful burns received on the preceding day at a filling station operated by him. Moreover, there is no reasonable doubt but that the defendant, through one Joe Heimer, was making delivery of gasoline at the station operated by the said West at the time of the fire. The conflagration was in the nature of a gasoline explosion and the decedent received burns from which he later died. There is no controversy but that the gasoline actually did escape through a hose from a tank of gasoline brought to the decedent's station by the said Joe Heimer while said gasoline was in process of being transferred from said tank to an underground storage tank belonging to the decedent.

The only question, therefore, is whether the defendant, through the negligence of the said Joe Heimer, its agent, caused the overflow and escape of said gasoline which caused the fire that followed. On that question the testimony of the plaintiff (in fact of both parties) tended to show that late on the evening in question, to-wit, May 29, 1947, the plaintiff and her husband were preparing for a short trip to Richmond in their pickup truck. The next day, being a holiday, it was desirable to obtain gasoline for customers of the station for the holiday trade. Arrangements were made for the said Joe Heimer to deliver at the decedent's station gasoline for the next day's use. This was being done when the tragic and disastrous fire occurred. The plaintiff said she was present when Mr. Heimer came with his truck and prepared to fill the underground tank. She said that he used a large hose and when the gas was turned on

she observed it was leaking at a point where it was attached to the truck. This was observed by Mr. Heimer also and corrected. She made observations as to the position of her husband and Mr. Heimer and the general situation of the tank from which the gasoline was being delivered in relation to the station. It was on the inner drive, next to the doors of the station, and the storage tank was somewhat rearward. She did not observe the escape of gasoline more than to say that a small quantity dripped from the tank when the gravity hose was first attached. The quantity escaping then was negligible, and it is obvious from all the testimony that this leakage did not cause the fire. Her next observation was when she returned to the station, after a brief absence, and while she was parking her pick-up truck, the fire occurred. She saw her husband emerge from the inferno, as well as Mr. Heimer who preceded her husband. She aided Mr. Heimer as he had emerged before her husband.

■ Kay Frances West, the little daughter of the deceased, also testified on behalf of the plaintiff. She was six years old at the time. Her testimony was permitted, as provided by Section 1895, R.S.Mo.1939, Mo.R.S.A., relating to incompetency of witnesses, as follows: " * * * second, a child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly; * * *."

Because of the use of the word "appears" the issue of incompetency of a child under ten years of age is for the trial court. State v. Jefferson, 77 Mo. 136; State v. Jeffries, 210 Mo. 302, 109 S.W. 614, 14 Ann.Cas. 524.

■ Upon a preliminary examination the court adjudged this witness competent and received her testimony. She gave no testimony with respect to the overflow or discharge of the gasoline on the premises. She approached the station a moment before the conflagration. She observed her father, as she believed, endeavoring to replace the nozzle of the hose in the fill cap or fill pipe from which it had obviously been

displaced. How it had become displaced she of course had not observed, and there was not one line of testimony on the part of the plaintiff as to how the nozzle had become displaced from the fill cap or fill pipe.

On the part of the defendant it appeared that while the said Joe Heimer and decedent were standing by, supposedly as the gasoline was being siphoned or pumped into the station tank, another party, now deceased, observed the displacement of the hose nozzle and made an exclamation in such way as to attract attention to the fact that the gasoline was escaping from the nozzle onto the premises and that the nozzle of the hose had been displaced or dislodged from the fill cap. The gasoline, it should be stated, had thus escaped and by gravity had flowed down to an automatic water heater on the premises where it ignited by the pilot light so that in a moment the entire premises were enveloped in flames. At the moment of the discovery, and before the conflagration, the witness, Joe Heimer, testified that upon inquiry of the decedent as to how the nozzle had been detached or removed from the fill pipe, the decedent said he had stumbled over it. On the way to the hospital, after his serious and fatal burns, the ambulance driver said in answer to his inquiry the decedent made the same statement. There were witnesses, however, who were present with the decedent at the same time who testified that they never heard such a statement. It was upon this testimony that counsel for plaintiff undoubtedly contends that there was evidence for the jury's consideration.

Other facts as they may become pertinent will be stated in the course of this memorandum opinion.

1. An examination of the complaint shows averments of negligence, with variations, in numerous paragraphs: "4. At said time and place, the said Joe Heimer undertook to transfer, pour and cause to flow the said gasoline which was contained in the said truck into a gasoline storage tank which was located underneath the cement floor of and inside the said filling station, by causing said gasoline to flow from said truck through a hose, which hose was attached to the said truck, and into an open steel fill pipe of about two inches in diameter, which pipe was connected with said tank and protruded approximately eight inches through and above the said cement floor of said filling station; and the said Joe Heimer directed the flow of said gasoline from said truck into said fill pipe and said tank so carelessly and negligently that the said gasoline was caused to escape from said fill pipe and to overflow and flood the floor of said filling station; * * *."

Other averments were: "5. The said Joe Heimer * * * inserted the nozzle or end of the said hose loosely and insecurely into the opening of the said fill pipe and in such a manner that the said nozzle or end of the said hose became detached and separated from the said fill pipe while the said gasoline was flowing through the said hose, thus causing the said gasoline to overflow and flood the said floor of the said filling station."

Another averment was that said Joe Heimer was negligent: "("6") * * * in that he omitted to inspect carefully the connection of the said nozzle or end of the said hose and the opening of the said fill pipe, and he failed to observe and notice that the said nozzle or end of the said hose was loosely and insecurely connected with the said opening of the said fill pipe, and in such manner that the said nozzle or end of the said pipe was likely to become detached and separated from the said fill pipe while the said gasoline was flowing through the said hose, thus permitting the said gasoline to overflow and flood the floor of the said filling station." Other averments, as indicated, were but variations of the above.

2. It was the testimony on behalf of the defendant that a large hose offered in evidence and identified by all of the parties and characterized as a gravity hose was initially attached to the truck and the nozzle inserted in the fill cap or fill pipe. This hose did not connect effectively according to Mr. Heimer, who detached it and then used what he designated as the force pump hose. Both of these instruments or devices were offered in evidence and the longer or force pump hose was charred at one end showing that it had been in the fire. It had a long

nozzle and was easily introduced into the fill pipe or fill cap. Physically, it would have been difficult to dislodge or separate it from the fill pipe. It could not have been separated by reason of its own weight or by reason of any movement or pressure of the gasoline occurring while the gasoline was flowing. Several witnesses testified on behalf of the defendant that in all their experience as experts in handling gasoline they had never known a hose with a nozzle of that type becoming displaced or separated from the fill pipe in the absence of some extraneous force. While this testimony was offered by the defendants, yet it was not at variance or contradictory of any evidence offered by the plaintiff. The plaintiff in her testimony had merely observed that Mr. Heimer had been confronted with the problem of siphoning the gasoline into the storage tank when he attempted to use the larger hose.

3. After the trial counsel obtained and submitted affidavits showing that the nozzle of the larger hose could not be inserted into the fill cap or fill pipe. Whether or not that be true, it was the undisputed testimony that Mr. Heimer had abandoned the larger hose and employed the smaller and longer hose in making the transfer of the gasoline.

4. Earnest counsel for the plaintiff in his brief, in discussing the testimony of the little girl, Kay Frances West, used this language in criticism of the court's comment in sustaining or granting a peremptory instruction: "It is unfortunate that Green has passed away and his testimony therefore is not available. It is, on the other hand, fortunate, with respect to advising the Court and jury as to the facts, that Kay Frances West, then only six years old, is competent to testify. She saw her daddy as the fire started trying to put the hose back in the fill pipe. That horrible memory will be forever indelibly impressed on her mind, despite her then tender years. *I think it not inappropriate to state that she is unable to understand the Court's remark, at the conclusion of the trial in ruling on the demurrer, that she only 'thought' she saw her father.*" (Emphasis mine).

As heretofore indicated by statute, a child under ten years of age is presumed to be incompetent and incapable of "receiving just impressions of the facts respecting which they are examined, or of relating them truly; * * *." There is a reason for this rule. It is difficult for mature minds to obtain correct impressions in tragic circumstances, such as occurred here. Even able counsel can undoubtedly recall impressions formed in moments of excitement which were not accurate. The books are filled with such cases. Mr. Heimer testified that he replaced the nozzle of the hose in the fill pipe. The law presumes that witnesses speak the truth. In some states this presumption is reinforced by positive statute. It is the duty of the court and the jury in every case to view the testimony upon the theory that the witnesses are telling the truth. Joe Heimer had testified that he, and not the decedent, attempted to replace the nozzle of the hose in the fill pipe. He was positive about this. It was not proper, therefore, for the court to say that Mr. Heimer had perjured himself on this immaterial and collateral fact, but that it is more reasonable to suppose that the six year old child had gotten the wrong impression. Earnest counsel place great stress upon this apparent contradiction in the testimony. Counsel should keep in mind that *it was not the question in the case as to who replaced the displaced nozzle of the hose; the question was one of negligence in the displacement of the nozzle.* (Emphasis mine). And it is the rule of universal acceptance that the credibility of a witness cannot be attacked by seeming inconsistencies in collateral matters. It may be assumed that little Kay Frances was right, and that Mr. Heimer was in error in his testimony. Yet, in what way does that convict the defendant of negligence? Unquestionably the hose was displaced. Undoubtedly its displacement was responsible for the fire. But the question here was whether there was evidence to show that the defendant was negligent in respect of its displacement.

In view of counsel's earnest appeal and expressions of confidence with respect

to the error of the court, this case has been given unusual thought and consideration. The conclusion is inescapable that the plaintiff was unable to produce testimony to show that the defendant was in any way responsible for the displacement of the nozzle of the hose so as to bring about the escape of the gasoline. On the contrary, the testimony on behalf of the defendant fully explains exactly what happened that caused the tragic event and the untimely death of plaintiff's husband.

In view of the above, the motion for a new trial should be and will be denied.